IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                     Case No. 3:08 CR 121

                Plaintiff,          MEMORANDUM OPINION
                                      AND ORDER

    -vs-
                                              JUDGE JACK ZOUHARY

Keven A. McIntyre,

                Defendant.

**BACKGROUND**

This matter is before the Court on Defendant Keven McIntyre's Motion to Suppress (Doc. No. 30). The Government filed a Response (Doc. No. 34). The Court held oral argument on June 16, 2008 and granted the parties leave to file supplemental briefs. The Government filed additional briefing (Doc. No. 39).

Defendant was arrested on February 1, 2008 in his apartment pursuant to a Toledo Municipal Court arrest warrant (Def. Ex. A) for Failure to Notify under Ohio Revised Code § 2950.05(E)(1) (requiring registered sex offenders to notify appropriate authority of name and place of employment). As part of the ongoing Northern Ohio Violent Fugitive Task Force, two United States Deputy Marshals, two detectives from the Lucas County Sheriff's Office and a sergeant from the Toledo Police arrived at Defendant's apartment to execute the arrest warrant. One officer placed the time of arrival at 9:00 a.m. to 9:15 a.m. while another said they arrived about 9:40 a.m.

The officers knocked on Defendant's door and entered after he answered and opened the door. According to testimony, all five wore prominent identification such as badges or marked jackets. They secured Defendant in handcuffs and placed him on the floor shortly after entering and identifying themselves.

The officers performed a security sweep in the apartment to ensure no one else was present. After completing this check, the officers removed Defendant's handcuffs and allowed him to sit on his couch and smoke a cigarette. Deputy Marshal Hodge then read Defendant his *Miranda* rights from a standard waiver form, which was signed by Defendant and witnessed by Hodge and Detective Carter (Gov. Ex. 1). The language above the signature indicated "I have read this statement of my rights and I understand what my rights are." At the bottom of the form, Defendant signed again under the "Waiver of Rights" section, with Hodge and Carter witnessing. The form was dated at the top with the time indicated as 9:53 a.m.

Hodge and Carter then immediately asked Defendant whether he would consent to a search of his apartment and presented a "Consent to Search" form to him. Defendant read and signed this form which stated: "These Deputies are authorized by me to take from my premises any letters, papers, materials or other property which they may desire" (Gov. Ex. 2). There is no time indicated on this form. In conducing their search of the apartment, officers noticed a computer in the kitchen and asked Defendant whether it belonged to him. He stated it was his computer and only he had access to it. Hodge asked whether any child pornography was on the computer. Defendant initially said "no" but, after some questioning, admitted he had visited some websites. At this time, Hodge called United States Secret Service Agent Jack Davis for assistance. Davis arrived some fifteen to thirty minutes later.

After Hodge apprised Davis of what happened, Davis spoke with Defendant and asked him to sign a "Consent to Search Computer/Electronic Equipment" form (Gov. Ex. 3). Davis explained the form to Defendant, and Defendant signed the form which is dated February 1 at 11:20 a.m. The form gives permission "to take from the above location, any computer(s), including internal hard drive(s)," and states: "I hereby consent to the search of those items for any data or material which is contraband or evidence of any crime." Davis then removed the computer for further inspection at the police station.

The following day, Toledo Police forensics department searched the computer hard drive and found images of child pornography. Before conducting a more extensive search, Carter applied for and obtained a search warrant for the computer from the Lucas County Court of Common Pleas on February 4 (Gov. Ex. 4). The warrant was directed at images of nude juvenile females stored on Defendant's computer. Carter explained he obtained this warrant as a backup in the event Defendant later recanted his consent for the computer search.

Defendant now seeks to suppress the images seized from the computer and any statements he made to the officers on February 1. He does not attack the validity of the arrest warrant but instead argues the officers exceeded the scope of the arrest warrant and improperly obtained consent to speak with him and search his apartment and computer. The Government argues it obtained written consent for each search performed and it exercised no coercion.

### DEFENDANT'S MOTION

Defendant's Motion presents two issues: (1) was the waiver of *Miranda* rights valid and voluntary; and (2) was the consent to search the computer valid and voluntary?

3

### *1.* **Miranda** *Waiver*

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment privilege against self-incrimination protects individuals from compulsion during custodial interrogation. *Id.* at 461. Any waiver of this right must be made "knowingly, voluntarily, and intelligently" for the statements to be admissible. *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990). The Court must engage in a two-part inquiry:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (internal quotation marks omitted).

The Government has amply supported its claim that Defendant knowingly, voluntarily and intelligently waived his *Miranda* rights. Hodge read the rights to Defendant, and Defendant signed an acknowledgment that he understood his rights and wished to waive them. Defendant was released from his handcuffs while being advised of his rights and signing the waiver. Furthermore, Defendant has previously encountered law enforcement and was "no stranger" to the criminal justice system. There is no evidence whatsoever of coercion or a lack of understanding by Defendant of his rights. Under the totality of the circumstances, the Miranda waiver was valid. Consequently, any statement Defendant made after waiving these rights is admissible, and evidence obtained as a result of these statements is not tainted under *Wong Sun v. United States*, 371 U.S. 471 (1963).

### *2. Consent to Search Apartment and Computer*

The Supreme Court has held that a search incident to a valid arrest may extend only to the arrestee's person and area within which he might gain possession of a weapon or destructible evidence. *Chimel v. California*, 395 U.S. 752, 763 (1969). The Government is not justified in routinely searching any other room other than where the arrest occurs, or, for that matter, searching through desk drawers and concealed areas. Such searches require a valid search warrant. *Id.*

Warrantless searches are *per se* unreasonable under the Fourth Amendment, subject to limited exceptions. The Government claims the consent exception applies because Defendant knowingly and voluntarily filled out a consent form allowing officers to search his apartment and computer. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The Government must show the consent was properly obtained and not the product of coercion. *Florida v. Royer*, 460 U.S. 491, 497 (1983). Relevant factors for consideration include: the individual defendant's knowledge of the right to refuse consent, age, intelligence and education. *Schneckloth*, 412 U.S. at 226-27. The Government must establish consent was valid by a preponderance of the evidence. *United States v. Haynes*, 301 F.3d 669, 679 (6th Cir. 2002).

Defendant is an adult who has completed at least a high school education, according to his statements to the Court during his detention hearing. Defendant does not claim his intelligence or comprehension is lacking or defective. The Government provides evidence of Defendant's knowledge of his right to refuse consent through the language contained on both consent forms. The "Consent to Search" form (Gov. Ex. 2) reads: "I, Keven McIntyre, having been informed of my constitutional right not to have a search made of my premises . . . hereby authorize" the search of the apartment. Likewise, the "Consent to Search Computer/Electronic Equipment" form (Gov. Ex. 3)

5

reads: "I have also been informed of my right to refuse to consent to such a search. . . . I understand that I may withdraw my consent at any time for any reason." The evidence shows Defendant signed these forms while seated on his couch with his handcuffs removed. These circumstances indicate a knowing and voluntary consent to the search of his apartment and computer.

Furthermore, Hodge testified Defendant was calm and cooperative and indicated he understood his rights. Carter gathered that Defendant was "savvy" about his rights from a previous encounter when Carter was investigating another registered sex offender. Both officers also cited Defendant's previous experience with the criminal justice system.

Defendant cites the arrival of five law enforcement officers with guns drawn as evidence of intimidation. However, the officers' display of their guns upon entering the apartment is not necessarily evidence of coercion. *United States v. Blakeney*, 942 F.2d 1001, 1015-16 (6th Cir. 1991) (holding district court did not err in finding consent voluntary where officer had earlier drawn gun but had replaced it in holster before seeking consent to search); *United States v. Scott*, 578 F.3d 1186, 1189 (6th Cir. 1978) (holding consent not coerced where one officer had gun drawn as precaution). In this case, Defendant does not dispute weapons were drawn only at the initial entry, and not during the time he was seated, smoking and talking to Hodge and Carter.

Defendant also points to the length and duration of the detention and questioning. Length and character of detention or questioning is a relevant factor in determining the validity of consent. *Schneckloth*, 412 U.S. at 226. Although the testimony of Hodge and Carter differed on the time of arrival at Defendant's apartment, both agreed the "Consent to Search Computer" form was signed at 11:20 a.m. Carter recorded their arrival at 9:40 a.m. in his written report and explained that some delay was attributable to waiting for Agent Davis to arrive to question Defendant about his computer

6

and obtain his consent. Carter also spoke with the state parole authority to determine whether the arrest for Failure to Notify would affect Defendant's status with that department.

Again, Defendant neither disputes this account nor offers evidence that coercive or intimidating tactics were used during that time to obtain consent. The Court finds the length of detention alone was not coercive and unreasonable. The instant case is distinct from situations in which officers employed tricks or threats over a long period of time. *See, e.g.*, *United States v. Ivy*, 165 F.3d 397 (6th Cir. 1998) (holding consent involuntary because police used deceit and other coercive tactics over course of seven to eight hours of detention and questioning).

The Government has established by a preponderance of the evidence that Defendant knowingly and voluntarily consented to a search of his apartment and computer.

## CONCLUSION

For the foregoing reasons, the Motion to Suppress (Doc. No. 30) is denied.

IT IS SO ORDERED.

                                                s/ *Jack Zouhary*
                                                JACK ZOUHARY
                                                U. S. DISTRICT JUDGE

                                                June 27, 2008